UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAKIA LEWIS,

        Plaintiff,

v.                                            Case No.  8:21-cv-1763-SPF

COMMISSIONER OF SOCIAL
SECURITY,
        Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and supplemental security income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, the Commissioner's decision is reversed.

**I.    Procedural Background**

Plaintiff applied for a period of disability and SSI (Tr. 209-15).  On September 17, 2009, after an administrative hearing, an ALJ found her disabled with an onset date of May 8, 2007 (her application date) (Tr. 131-36).  In March 2016, the Commissioner reevaluated Plaintiff's entitlement to benefits under 20 C.F.R. § 416.994 and found she had medically improved since her September 17, 2009 comparison point decision ("CPD")[1] (Tr. 137-38).  The agency terminated her benefits as of March 25, 2016

---

[1] A CPD is "the most recent favorable medical decision . . . involving a consideration of the medical evidence and the issue of whether you were disabled or continue to be disabled which became final."  20 C.F.R. § 416.994(b)(7).

("Cessation Date") because she was no longer disabled (*Id*.). After a hearing, the ALJ upheld this determination in a September 4, 2018 decision (Tr. 9-22). The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to federal court (*see* 8:19-cv-1742-TGW, Doc. 1). A judge for the Middle District of Florida remanded Plaintiff's case to the agency (Tr. 685-94). On February 11, 2021, after a third administrative hearing (Tr. 632-61), the ALJ again determined Plaintiff had medically improved since her CPD and was not disabled as of her Cessation Date (Tr. 609-18). Once more, the Appeals Council denied Plaintiff's request for review. Plaintiff timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff was born on October 10, 1983 and was 25 on the date of her CPD (Tr. 139) and 34 on her Cessation Date (Tr. 637). There is conflicting evidence concerning her education level: at her August 2018 hearing, she testified she had obtained a GED and attended two engineering college courses (Tr. 101), but at her December 2020 hearing, she testified she left school in the ninth grade and did not earn a GED (Tr. 637). Plaintiff has some work experience as a self-employed babysitter (Tr. 638).

On May 8, 2007, Plaintiff alleged disability due to depression, dizziness, migraines, seizures, asthma, anemia, difficulty standing, and difficulty dealing with the heat (Tr. 229). After conducting a hearing and reviewing the evidence of record, the ALJ found Plaintiff had these severe impairments at the time of the CPD: post-traumatic stress disorder (severe), major depression (severe and recurrent), schizoaffective disorder, and

mood disorder (Tr. 133). According to the CPD, Plaintiff had the residual functional capacity ("RFC") to perform a significantly restricted range of sedentary work limited by numerous nonexertional impairments, rendering her unable to work (*Id.*). The ALJ found Plaintiff was disabled as of May 8, 2007 (Tr. 136).

Then, Plaintiff was incarcerated from November 2014 through November 2015 following a conviction for criminal mischief, battery on a law enforcement officer, assault, and violation of parole (Tr. 496). After Plaintiff was released, the Commissioner re-evaluated Plaintiff's case and found she had medically improved as of March 25, 2016. Plaintiff challenged this decision in federal court, and the presiding judge found the ALJ's decision "[wa]s devoid of any comparison between the old evidence and the new evidence" and remanded her case (Tr. 692).

The agency held a third hearing in December 2020 (Tr. 632-61). Plaintiff testified she was living with her mom and two of her seven children at that time (Tr. 641). Plaintiff said she no longer experienced auditory or visual hallucinations, and "the medicine they have had me taking right now or whatever, it keeps my head level." (Tr. 641). But Plaintiff's medications had the side effect of weight gain. In 2007, she reported weighing 130 pounds. In December 2020, Plaintiff testified she weighed 201 pounds (Tr. 646). She said she had no trouble concentrating and focusing (Tr. 650) but could not remember most of her childhood (Tr. 651).

In a February 11, 2021 decision, the ALJ found the severe mental impairments that supported Plaintiff's CPD (PTSD, depression, schizophrenia, and mood disorder) "do not cause more than minimal limitations in the claimant's ability to perform basic mental

3

work activities" and were no longer severe (Tr. 612). Instead, the ALJ determined that "[t]he medical evidence establishes that, since March 25, 2016, the claimant has had the following medically determinable impairments: degenerative disc disease, epilepsy, migraines, asthma. These are the claimant's severe impairments." (Tr. 611).

The ALJ determined that Plaintiff had medically improved as of the Cessation Date and this medical improvement related to her ability to work (Tr. 612). According to the ALJ, Plaintiff had the RFC to perform sedentary work with these limitations: "she could frequently crawl, crouch, kneel, balance; frequently climb ramps and stairs; occasionally stoop; occasionally climb ladders, ropes, and scaffolds; and . . . should not work around heavy levels of respiratory ailments." (Tr. 613). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 614).

Given Plaintiff's background and RFC, a vocational expert ("VE") testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as addresser, document preparer, and call-out operator (Tr. 618). Based on Plaintiff's age, education, RFC, work experience, and the VE's testimony, the ALJ found Plaintiff's disability ended on her Cessation Date, and her severe impairments since then were not disabling (Tr. 618).

### III. Legal Standard

An ALJ typically follows a five-step sequential inquiry when deciding whether an individual is disabled. The ALJ must determine whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 416.920. Courts review the Commissioner's final decisions to determine if they are supported by substantial evidence and based on proper legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (quotations omitted). Because we "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]," a decision supported by substantial evidence must be affirmed, "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (quotations omitted). The claimant bears the burden of persuasion through step four, and at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

A claimant's continued entitlement to disability benefits must be reviewed periodically, however. 20 C.F.R. § 416.994(a). When an ALJ is determining whether a disability has ended, the regulations mandate a different sequential inquiry. *See* 20 C.F.R. § 416.994(f). This sequential inquiry requires an ALJ to determine:

(1) Whether the claimant is engaged in substantial gainful activity and, if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(2) If impairments do not meet a listing, whether there has been medical improvement;

(3) If there has been improvement, whether the improvement is related to the claimant's ability to do work;

(4) If there is improvement related to a claimant's ability to do work, whether an exception to medical improvement applies;

(5) If medical improvement is related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(6) If the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(7) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*See* 20 C.F.R. § 416.994(f); *Gombash v. Comm'r of Soc. Sec. Admin.*, 566 F. App'x 857, 858-59 (11th Cir. 2014).  Unlike an entitlement case, in a cessation of benefits case, the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff has experienced "medical improvement."  *Olivo v. Colvin*, No. 6:16-cv-259-Orl-40JRK, 2017 WL 708743, at *2 (M.D. Fla. Jan. 30, 2017); *Townsend v.*

*Comm'r of Soc. Sec.*, No. 6:13-cv-1783-Orl-DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015).

**IV.   Analysis**

Plaintiff argues the ALJ erred by (1) finding Plaintiff had medically improved as of her Cessation Date and (2) not ordering a consultative psychological examination (Doc. 17).  The Commissioner retorts that the ALJ adequately compared Plaintiff's pre-CPD evidence against her post-CPD evidence, as the regulations mandate for a finding of medical improvement.  And – according to the Commissioner – the ALJ did not have to order a consultative examination because Plaintiff points to no evidentiary gaps, and the record contained enough evidence to conclude Plaintiff's psychological impairments were no longer severe (*Id.*).

**A. Medical Improvement**

Plaintiff contends the ALJ's medical improvement finding is not supported by substantial evidence.  The statutory scheme permits the Commissioner to terminate a claimant's benefits upon finding there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work such that the claimant can now engage in substantial gainful activity.  42 U.S.C § 423(f)(1).  The regulations define medical improvement as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [she] [w]as disabled . . . ." 20 C.F.R. § 416.994(b)(1).

When evaluating medical improvement, the Commissioner must compare the medical evidence supporting a claimant's CPD with new medical evidence.  *McAulay v.*

*Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985); *Klaes v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012); 20 C.F.R. § 416.994(c)(1). The Eleventh Circuit has emphasized that a cursory comparison is insufficient; the ALJ must "actually compare" the new evidence to the evidence upon which the claimant was originally found to be disabled. *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984); *see Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). Without a comparison of the old and new evidence, there can be no adequate finding of improvement. *Id.* Failing to make such comparison requires reversal and remand for application of the proper legal standard. *Id.*; *see Klaes*, 499 F. App'x at 896 (citing *Vaughn* and noting that, if the ALJ fails to evaluate the prior medical evidence and compare it to the new evidence, courts must reverse and remand for application of the proper legal standard).

Here, regarding medical improvement, the ALJ found that "[t]he medical evidence supports a finding that, by March 25, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD." (R. 611) But supporting his step two finding, the ALJ relied on medical records dating from 2012 through 2020, despite that Plaintiff's September 2009 CPD and many records on which it was based are contained in the current administrative record (*see* Tr. 131-36, 905-82). This single sentence regarding Plaintiff's CPD appears to be the ALJ's entire discussion of Plaintiff's medical improvement – at least all that is included under the "Medical Improvement" heading of the ALJ's decision (Tr. 611). In another section of his decision addressing Plaintiff's post-Cessation Date RFC, the ALJ states:

> In this case, the claimant has both testified, and indicated within her function report, that the symptoms associated with her mental impairments

8

> have improved with medication compliance. (Hearing). For instance, within her July 2007 function report, the claimant indicates that her symptoms include impaired memory, impaired concentration, impaired understanding, and difficulty following instructions. (18E/6). However, in the claimant's more recent August 2018 function report, she indicates that her symptoms have become more physical in nature. (28E/6). Furthermore, during her hearing, the claimant testified that symptoms she experienced in the past, such as auditory hallucinations, are now well-controlled on her medication regime. (Hearing). This is further evidenced by the claimant's report of an increase in psychiatrically based symptoms in February 2016 due to her medication non-compliance. (7F/1). By 2017, the claimant generally reported that her medication regimen has been "very helpful" at alleviating symptoms such as auditory hallucinations. (16F/3, 29F/5, Hearing).

(R. 611-12). Tellingly, the medical records the ALJ references all post-date Plaintiff's CPD by at least seven years. The ALJ's summary of Plaintiff's July 2007 function report (Exhibit 18E, an agency form on which Plaintiff hand wrote her subjective symptoms) is the only pre-CPD evidence cited in the entire decision (Tr. 611, 799-805). The ALJ does not cite to any pre-CPD medical opinions.

Instead, the ALJ found that Plaintiff's previously disabling psychiatric impairments were no longer severe, seemingly because she said so and she was stable on medication.[2] The ALJ cited a July 2017 treatment note from Gracepoint psychiatrist Stephanie Lockett (called "Ex. 16F/3" in the excerpt above) (Tr. 612). Dr. Lockett

---

[2] To this point, the Eleventh Circuit notes: "Many mental disorders . . . are characterized by the unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possible good months." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1106 (11th Cir. 2021). In *Simon*, applying regulations that have since been revised, the Eleventh Circuit reversed the district court's decision and remanded the plaintiff's case to the agency when the ALJ discounted a treating psychiatrist's opinion because his treatment records occasionally noted plaintiff's symptoms of bipolar disorder were "stable on medication." *Id.*

recorded Plaintiff's comment that Trinza (an atypical antipsychotic prescribed to treat schizophrenia) was reducing her auditory and visual hallucinations (Tr. 598). The ALJ also cited a July 2018 assessment by Gracepoint psychologist Michelle Arbor, who noted that Plaintiff considered her mental health to be stable (Tr. 612, 1033).

But in February 2018, Dr. Lockett noted Plaintiff was "exhibiting signs of mania," and "smiling today which is very unusual – usually very flat affect." (Tr. 600). And Ms. Arbor documented Plaintiff's memory issues (Tr. 1033), stating Plaintiff "was in foster care from age 7 until age 17. She doesn't remember why she was there. Client denied any history of physical, emotional, or sexual abuse." (Tr. 1032).[3] While imprisoned in 2015, Plaintiff was Baker Act-ed (Tr. 497). All this post-CPD evidence supports Plaintiff's CPD, which underscored that Plaintiff was "sexually abused by multiple adult male relatives from the age of four into adulthood," had been involuntarily hospitalized for psychiatric impairments numerous times beginning at 15, had taken psychotropic medications since then, had her parental rights terminated due to uncontrolled symptoms related to her mental illness, and had attempted suicide at least four times (Tr. 133).

But the ALJ did not compare the pre-CPD evidence to the new evidence. The ALJ's reference to the CPD itself and to one item of pre-CPD evidence (the July 2007 function report) does not add up to a rigorous comparison of the original medical evidence

---

[3] Similarly, a March 2015 intake form prepared by the Florida Department of Corrections and based on Plaintiff's self-reporting states that Plaintiff met all childhood developmental milestones, attended college, grew up with a loving foster family until she married at 18, had no history of sexual, physical, or mental abuse, was not on psychotropic medications, and was not in need of psychological treatment (Tr. 423-24).

and the new medical evidence required to support a finding of medical improvement. *See Freeman*, 739 F.2d at 566; *Jasper v. Colvin*, No. 8:16-cv-727-T-23AEP, 2017 WL 655528, at *4 (M.D. Fla Jan. 31, 2017) (report and recommendation), *adopted at* 2017 WL 638389 (Feb. 16, 2017). Similarly, that the ALJ listed Plaintiff's impairments at the time of the CPD and her impairments as of March 25, 2016 is insufficient. At step two, the ALJ did not substantively compare the prior and current medical evidence to determine whether it showed changes in the symptoms, signs, or laboratory findings associated with Plaintiff's impairments, as mandated by 20 C.F.R. § 416.994(c)(1) and Eleventh Circuit precedent. The Commissioner has not met her burden of proving Plaintiff is no longer disabled.[4]

### B.    Full and Fair Record

Because the ALJ did not support his medical improvement finding with substantial evidence, the Court does not address Plaintiff's argument that the ALJ erred in failing to order a consultative psychological examination.

---

[4] The Commissioner suggests it is Plaintiff's burden to prove her continuing disability (*see* Doc. 17 at 6). This is incorrect. "When considering a continuation of termination or cessation of benefits, . . . the burden is on the Commissioner to prove to prove the claimant is no longer disabled as of the cessation date because the Plaintiff had experienced 'medical improvement.'" *Townsend v. Comm'r of Soc. Sec.*, No. 6:13-cv-1783-Orl-DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015).

## V. Conclusion

Accordingly, it is:

ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded to the agency to conduct further administrative proceedings and apply the proper legal standards in determining whether Plaintiff experienced medical improvement.

2. The Clerk is directed to enter final judgment in Plaintiff's favor and close the case.

DONE in Tampa, Florida, on August 30, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE